1 | WOLF HALDENSTEIN ADLER
  | FREEMAN & HERZ LLP
2 | FRANCIS M. GREGOREK (144785)
  | BETSY C. MANIFOLD (182450)
3 | FRANCIS A. BOTTINI, JR. (175783)
  | RACHELE R. RICKERT (190634)
4 | Symphony Towers
  | 750 B Street, Suite 2770
5 | San Diego, CA 92101
  | Telephone: 619/239-4599
6 | Facsimile: 619/234-4599

ORIGINAL FILED

JUN - 2 2006

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

L A MURPHY, in the right of and for the benefit of Xilinx Inc.,

    Plaintiff,

v.

WILLEM P. ROELANDTS, KRIS CHELLAM, JOHN L. DOYLE, JERALD G. FISHMAN, PHILIP T. GIANOS, WILLIAM G. HOWARD, JR., HAROLD E. HUGHES, J. MICHAEL PATTERSON, ELIZABETH VANDERSLICE,

    Defendants,

and

XILINX INC.,

    Nominal Defendant.

CASE NO. C 06 3564 RMW

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, L A Murphy ("Murphy"), by and through her attorneys, derivatively on behalf of Xilinx Inc. ("Xilinx" or the "Company"), alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available documents regarding the Company as follows:

## SUMMARY

1. Plaintiff, derivatively on behalf of Nominal Defendant Xilinx, seeks relief for the damages sustained, and to be sustained by Xilinx, against its President and Chief Executive Officer ("CEO"), its Senior Vice President, and certain members of its Board of Directors (the "Board") for violations of state and federal law, including their breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), which occurred between January 1, 1998 and the present (the "Relevant Period").

2. Defendant Willem P. Roelandts ("Roelandts), the Company's President and CEO, and Kris Chellam ("Chellam"), the Company's Senior Vice President for Corporate and Enterprise Services, have engaged in certain transactions, including the exercise of back-dated options, to reap millions of dollars in unlawful windfall profits at the expense of the Company.

3. A stock option granted to an employee of a corporation allows the employee to purchase company stock at a specified price – referred to as the "exercise price" – for a specified period of time. Stock options are granted as part of employees' compensation packages to create incentives for them to boost profitability and stock value. When an employee exercises an option, he or she purchases the stock from the Company at the exercise price, regardless of the stock's price at the time the option is exercised.

4. The unlawful conduct occurred while defendants were directing the Company. These defendants authorized or failed to halt the back-dating of options in dereliction of their fiduciary duties to the Company as Directors, thus causing or allowing the Company to suffer millions of dollars in harm.

5. Options are required to be priced at the price of the Company stock on the day of the grant. If an option is back-dated to a day on which the market price was lower than the price on the day the option is granted, then the employee pays less and the Company gets less money for the stock when the option is exercised. Furthermore, the purchaser of the option gets a greater compensation than that to which he or she is entitled. Such conduct is unlawful.

6. On May 22, 2006, a Merrill Lynch Note, titled "Options Pricing – Hindsight is 20/20," written by semiconductor industry analyst, Joe Osha ("the Merrill Lynch Note"), identified several companies that were "at risk" for stock options back-dating, including Nominal Defendant, Xilinx. The report provided a chart that specifically identified the alleged "at risk" stock option grants as those belonging to defendants Roelandts and Chellam.

7. Back-dating the options violated the Company's stock option plans. Back-dating the options also breached of defendants' fiduciary duties of care, loyalty, and good faith to the Company.

8. Defendants' conduct has unjustly enriched the Xilinx's top executives, including defendants Roelandts and Chellam, and has exposed the Company to great expense and liability, to the detriment of the Company and its shareholders.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1331, because plaintiff's claims arise in part under the Constitution and the laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(a)(1) because one or more of defendants either resides or maintains executives offices in this Judicial District, and a substantial portion the acts and transactions constituting the violations of law alleged in this Complaint occurred in substantial part in this

Judicial District. Moreover, defendants have received substantial compensation in this Judicial District by doing business here and engaging in numerous activities that had an effect in this Judicial District.

## PARTIES

### The Plaintiff

11. Plaintiff Murphy is a Florida resident and has been a holder of the Company's common stock since February 28, 2000.

12. As a current holder of Xilinx common stock and a holder during the period of the wrongs alleged herein, and pursuant to Fed. R. Civ. P. 23.1, plaintiff has standing to assert these claims on behalf of the Company and will fairly and adequately protect the interests of the Company and its other stockholders.

### The Management Defendants

13. Defendant Roelandts has served at the helm of Xilinx as President and CEO, Since January 1996. In August 2003, he assumed the position of Chairman of the Board. Defendant Roelandts resides in California.

14. Defendant Chellam has been, since July 2005, Senior Vice President, Corporate and Enterprise Services, with responsibility for business and strategy development, information technology, internal audit, real estate, and Xilinx Asia-Pacific headquarters in Singapore. Chellam joined the Company in July 1998 and served as Senior Vice President of Finance and Chief Financial Officer until July 2005. Defendant Chellam resides in California.

15. Defendants Roelandts and Chellam are sometimes hereinafter referred to as the "Management Defendants."

### The Director Defendants

16. Defendant John L. Doyle ("Doyle") has been a member of the Board since 1994. He was on the Compensation Committee in 1997 and 1998. Defendant Doyle resides in California.

17. Defendant Jerald G. Fishman ("Fishman") has been a member of the since 2000. He has been a member of the Compensation Committee since 2001. Defendant Fishman resides in

Massachusetts.

18. Defendant Philip T. Gianos ("Gianos") has been a member of the Board since 1985. He has been a member of the Compensation Committee since 1997. Defendant Gianos resides in California.

19. Defendant William G. Howard, Jr., ("Howard") has been a member of the Board since 1997. He has been a member of the Compensation Committee since 1997. Defendant Howard resides in California.

20. Defendant Harold E. Hughes ("Hughes") has been a member of the Board since 2003. Defendant Hughes resides in California.

21. Defendant J. Michael Patterson ("Patterson") has been a member of the Board since 2005. Defendant Patterson resides in California.

22. Defendant Elizabeth Vanderslice ("Vanderslice") has been a member of the Board since 2001. Defendant Vanderslice resides in California.

23. Defendants Roelandts, Doyle, Fishman, Gianos, Howard, Hughes, Patterson, and Vanderslice, are sometimes collective referred to as the "Director Defendants."

**The Nominal Defendant**

24. Nominal Defendant Xilinx is a Delaware corporation with its executive offices and principal place of business at 2100 Logic Drive, San Jose, California 95124. Xilinx, Inc. engages in the design, development, and marketing of programmable logic solutions. The Company offers programmable logic devices, including field programmable gate arrays and complex programmable logic devices, software design tools, and predefined system functions delivered as intellectual property cores. The Company's products are used by electronic equipment manufacturers primarily in the communications, storage, server, consumer, industrial, and other markets. In addition, Xilinx offers education, design, and support services. The Company sells its products through independent domestic and foreign distributors, a network of independent sales representative firms, and through a direct sales management organization to original equipment manufacturers in North America, Europe, Japan, and Asia Pacific.

## OBLIGATIONS AND DUTIES OF THE DEFENDANTS

25. By reason of their positions as directors, officers, and/or fiduciaries of the Company and because of their ability to control the business, corporate, and financial affairs of the Company, each of the defendants owed the Company and its shareholders the duty to exercise due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets; the duty of loyalty, to put the interests of the Company above their own financial interests; and the duty of candor, including full and candid disclosure of all material facts related thereto. Further, defendants owed a duty to the Company and its shareholders to ensure that the Company operated in compliance with all applicable federal and state laws, rules, and regulations, and that the Company did not engage in any unsafe, unsound, or illegal business practices. The conduct of defendants complained of herein involves knowing violations of their duties as Directors of the Company, and the absence of good faith on their part, which defendants were aware or should have been aware, posed a risk of serious injury to the Company.

26. To discharge these duties, defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of the Company. By virtue of this obligation of ordinary care and diligence, defendants were required, among other things, to:

    (a)    manage, conduct, supervise, and direct the employees, businesses and affairs of the Company in accordance with laws, rules and regulations, and the charter and by-laws of the Company;

    (b)    neither violate nor knowingly or recklessly permit any officer, director or employee of the Company to violate applicable laws, rules and regulations, and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by the Company;

    (c)    remain informed as to how the Company was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow defendants to perform their

5

                oversight function properly to prevent the use of non-public corporate information for personal profit;

    (d)    supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by the Company, and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of the Company, and to make full and accurate disclosure of all material facts, concerning *inter alia*, each of the subjects and duties set forth above; and

    (e)    preserve and enhance the Company's reputation as befits a public corporation and to maintain public trust and confidence in the Company as a prudently managed institution fully capable of meeting its duties and obligations.

27. Defendants breached their duties of loyalty, full disclosure, due care and/or good faith by back-dating options and/or allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results, as detailed herein, and/or by failing to prevent defendants from taking such illegal actions.

## XILINX'S STOCK OPTION PLANS

28. During the Relevant Period the Company had two stock option plans – the 1988 Stock Option Plan and the 1997 Stock Plan (hereinafter collectively the "Option Plans"). The Option Plans covered both Incentive Stock Options, which were granted to employees, and Non-Statutory Stock Options, which were granted to employees, directors and consultants. Both plans are, according to the Company's Proxy, administered by the Compensation Committee, which has the "exclusive authority to grant options to executive officers under the 1988 Stock Option Plan and the 1997 Stock Plan." The Option Plans require that the exercise price of all incentive stock options granted "be no less than 100% of the Fair Market Value per Share on the date of the grant."

## SUBSTANTIVE ALLEGATIONS

### Defendant Roelandts

29. Defendant Roelandts was hired as CEO of the Company in January 1996. As part of his compensation, Roelandts received stock option grants from the Company under the Option Plans. According to the Merrill Lynch Note, Roelandts' grants from 1998 through 2001 were considered suspicious because they generated "excess returns" within 20 days of the grant of stock

options. The following examples demonstrate these excessive returns:

    (a)    In 1998, the Company awarded defendant Roelandts1 two stock option grants. On April 1, 1998, he was purportedly awarded an option to purchase 360,000 shares at $9.97 per share. A few weeks later, by April 24, 1998, the stock rose to $11.69 per share. On October 15, 1998, the Company purportedly awarded him an option to purchase 20,400 shares at $9.98 per share. A month later, on November 16, the stock climbed to $13.16 per share.

    (b)    In 1999, the Company awarded defendant Roelandts two stock option grants. He was allegedly awarded an option to purchase 600,000 shares on April 1, 1999 at a price of $21.81 per share. Two weeks later on April 15, 1999, he was purportedly awarded an option to purchase 20,400 shares at a price of $24.75 per share. On April 22, 1999, just one week after the second option grant, the stock reached $26.56 per share.

    (c)    In 2000, defendant Roelandts allegedly received an option grant to purchase 175,000 shares of stock dated April 3, 2000 at an exercise price of $77.63 per share. By April 7, 2000, the stock reached $81.93 per share. On Friday March 31, 2000 it had been trading at $82.81 per share. Defendant Roelandts is either very lucky or the options were back-dated to take advantage of the stock's low price on April 3, 2000.

    (d)    In 2001, the Company awarded defendant Roelandts two stock option grants. The first grant was purportedly awarded on April 2, 2001, giving Roelandts the option to purchase 300,000 shares at $33.13 per share. This alleged grant preceded a significant stock rise and just eighteen days later on April 20, 2001, the stock was trading at $48.44 per share. Roelandts allegedly received another option grant to purchase 150,000 shares dated November 15, 2001 for $37.57 a share. By December 5, 2005, the stock was trading at $42.41 per share.

**Defendant Chellam**

30.    Defendant Chellam was hired by the Company in July 1998 and served as Senior Vice President of Finance and Chief Financial Officer until July 2005 before assuming his current position of Senior Vice President, Corporate and Enterprise Services. According to the Merrill Lynch Note, Chellam's grants from 1998 through 2001 were suspicious because they generated "excess returns" within 20 days of the grant of stock options:

    (a)    On July 27, 1998, the Company allegedly awarded defendant Chellam an option to purchase 600,000 shares of an exercise price of $8.91 per share. Less than two weeks later, by August 7, 1998, the stock had climbed to $10.66 per share.

7

(b) The Company purportedly awarded defendant Chellam an option grant dated April 1, 1999 to purchase 80,000 shares at a price of $21.81 per share. On April 22, 1999, just three weeks later the stock was trading at $26.56 per share.

(c) In 2000, defendant Chellam allegedly received a grant dated April 3, 2000 to purchase 50,000 shares of stock at an exercise price of $77.63 per share. By Friday, April 7, 2000, the stock reached $81.93. Defendant Chellam is either very lucky or the options were back-dated to take advantage of the stock's low price on April 3, 2000.

(d) In 2001, the Company awarded defendant Chellam two stock option grants. The first grant was purportedly awarded on the April 2, 2001, granted Chellam an option to purchase 75,000 shares at $33.13. This alleged grant preceded a significant stock rise and just eighteen days later on April 20, 2001, the stock was trading at $48.44. Chellam allegedly received another grant dated November 15, 2001 to purchase 20,000 shares for $37.57 per share. By December 5, 2005, the stock was trading at $42.41 per share.

**The Consequences**

31. As a result of the back-dating and other manipulation of options issued to the Management Defendants, they have been unjustly enriched in the amount of millions of dollars at the expense of the Company. The Company has received and will receive less money from the Management Defendants when they exercise their options at prices substantially lower than they would have if the options had not been back-dated.

32. The practice of back-dating stock options not only lined the pockets of the Company's executives at the direct expense of the Company, but also resulted in the overstatement of the Company's profits. This is because options priced below the stock's fair market value when they were awarded brought the recipient an instant paper gain that must be accounted for as additional compensation and treated as an expense to the Company. The Company must account for the options at a lower price, and will have to restate its results to reflect the previously unreported expenses.

33. The practice of back-dating options has caused the Company to suffer additional adverse consequences, including (i) the drop in its stock price attributable to the market's loss of confidence in the Company's management, thus increasing the Company's cost of borrowing and otherwise harming its operations, and (ii) exposure to the cost of defending against and potential

liability for regulatory actions and private securities class actions.

## THE XILINX BOARD

34. During the Relevant Period, the Company, through the actions of its Board and its Stock Option and Compensation Committee, granted stock options for the purchase of millions of shares of the Company's common stock to the Management Defendants.

35. Director Defendants misrepresented and actively concealed and caused the Company to misrepresent and actively conceal in public SEC filings that the stock options were priced at no less than the fair market value of the stock on the date of the grant, thereby affirmatively concealing the claims set forth herein. The stock option plans, referenced above, were exhibits that were incorporated by reference each year in the Company's Annual Reports on Form 10-K. Also, the Management Defendants' compensation, including their stock option grants, were disclosed in the Company's yearly proxy statements promulgated in connection with the Company's annual meetings. Director Defendants' misrepresentations about their stock option pricing practices were known to be false or were made in reckless disregard of its truth or falsity, and the concealment could not have been discovered through reasonable diligence by the typical shareholder, prior to the publication of the Merrill Lynch Note.

36. Contrary to the provisions in the Option Plans and public disclosures, as shown by the pattern of grant dates that were highly favorable to the Management Defendants, the stock options were not, in fact, priced on the date of the grant, but were in fact back-dated illegally and/or designed solely to benefit the Management Defendants.

37. Director Defendants stood in a fiduciary relationship with the Company's shareholders and thereby owed them duties of due care and loyalty. These duties require the Board to act in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he or she reasonably believes to be in the best interest of the Company and its shareholders.

38. Director Defendants violated their fiduciary duties to the Company by failing to act with due care, loyalty and good faith when they either expressly authorized the practice of back-dating options, or in conscious abrogation of their fiduciary duties, permitted it to occur.

9

39. Instead of properly disclosing these improper stock option backdating practices and the corresponding understatement of compensation costs, Director Defendants caused or allowed these practices to continue unabated throughout the Relevant Period.

40. Director Defendants' breaches of their fiduciary duties have exposed the Company to a number of harms including: the expense of internal investigation; the expense of SEC investigations; the potential liability under tax laws and federal securities laws; the possibility of having to restate financial results; and liability to stock purchasers.

## DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS

41. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the injuries suffered, and to be suffered, by the Company as a direct result of the breach of fiduciary duty, waste of corporate assets, and unjust enrichment, alleged herein. The Company is named as a nominal defendant solely in a derivative capacity.

42. Plaintiff will adequately and fairly represent the interest of the Company in enforcing and prosecuting its rights.

43. Plaintiff is and has continuously been an owner of the Company stock during the wrongful conduct alleged herein.

44. Plaintiff did not make demand on the Board of the Company to bring this action on behalf of the Company because such a demand would have been a futile, wasteful and useless act for the following reasons:

(a) Between 1998 and 2001, defendant Roelandts was the recipient of the stock options, which plaintiff alleges were back-dated. Because Roelandts received a personal financial benefit from the challenged transactions, he is interested and demand upon him is futile;

(b) Between 1998 and 2001, defendant Chellam was the recipient of the stock options, which plaintiff alleges were back-dated. Because Chellam received a personal financial benefit from the challenged transactions, he is interested and demand upon him is futile;

(c) All of the Director Defendants authorized, approved, ratified or have failed to rectify some or all of the back-dated stock option grants at issue here and are named as defendants herein.

10

(d) The Compensation Committee was at all relevant times responsible for overseeing the Company's stock option plans. The Compensation Committee was required to report back to the entire Board on all aspects of compensation prior to approving any one stock option grant. The members of the Compensation Committee, and the Board by its approval of their recommendations, enabled, or through conscious abdication of duty, permitted the Company to back-date stock options issued to the Management Defendants. By such actions, defendants breached their fiduciary duties to the Company. The back-dating of stock options was in direct violation of the stock option plans;

(e) The back-dating of options as alleged herein was unlawful and not within defendants' business judgment to acquire, authorize, ratify or facilitate;

(f) There was no basis or justification for back-dating the stock options. It was designed solely to benefit the Management Defendants in a manner that was inconsistent with the Company's stock option plans, and the Company's public disclosures, to the detriment of the Company. Hence, the transactions constituted a waste of corporate assets, and could not have been the product of the proper exercise of business judgment by the defendants;

(g) All of the defendants authorized the filing of Proxy Statements, in support of their nomination as Directors, which failed to disclose that the Management Director's stock options had been back-dated. They also authorized the filing of shareholder approved stock option plans which misrepresented that the options carry the stock price of the day of the award. Any suit by the defendants to remedy the wrongs complained of herein could also expose them to suit for securities fraud and proxy violations; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action.

(h) All of the defendants signed the Company's Annual Reports on Form 10-K between 1998 and 2001, which contained the Company's financial statements, which failed to account for the back-dated stock options as compensation and an expense of the Company. As a result, those financial statements of the Company may have overstated its profits and may need to be restated. Any suit by the defendants to remedy the wrongs complained of herein could also

expose them to suit for securities fraud; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action;

(i) All of the defendants participated in, approved, or through abdication of duty, permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company stockholders and/or acting with negligence and gross negligence disregarded the wrongs complained of herein, and therefore are not disinterested parties;

(j) On information and belief, defendants are protected against liability for breaches of fiduciary duty alleged in the Complaint by directors' and officers' liability insurance policies. However, under those policies, if defendants were to cause the Company to sue itself or certain officers of Xilinx, there would be no directors' and officers' insurance protection. This is yet another reason why defendants are hopelessly conflicted in making any independent determination that would cause the Company to bring this action.

(k) Despite defendants' breaches of duty, the Board has not recommended that any defendant be relieved of his or her duties as director. By maintaining the *status quo* in light of these breaches of duty, the entire Board failed to exercise proper business judgment and therefore lacks independence.

(l) Most egregiously, the Board did not require that defendants Roelandts and Chellam immediately disgorge all of their ill-gotten gains from their improper manipulation of their stock option grants, did not require them to return all unexecuted stock options to the Company, and did not require them to disgorge their bonuses and equity-based compensation to the Company, despite their indisputable breaches of fiduciary duties, which worked a direct harm to the Company. Nor did they take any other action, including commencing legal proceedings, to protect the interests of the Company.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

45. Plaintiffs incorporate by reference and realleges paragraphs 1 through 46 above, as

if set forth herein.

46. Director Defendants issued, caused to be issued and participated in the issuance of materially false and misleading statements to shareholders which were contained in the Company's Definitive Proxies filed on June 17, 2002, and June 12, 2003, which each misrepresented or failed to disclose, *inter alia,* the facts set forth above. By reasons of the conduct alleged herein, each Director Defendant violated Section 14(a) of the Exchange Act. The information would have been material to the Company's shareholders in determining whether to elect directors to manage their company.

47. Plaintiff, on behalf of the Company, thereby seeks to void the election of Director Defendants based upon the misleading and incomplete proxy materials, and to recover damages caused by defendants' failure to disclose the improper compensation described herein.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty

48. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

49. The defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty and due care.

50. The defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

51. Each of the defendants authorized, or by abdication of duty, permitted the stock options granted to the Management Defendants to be back-dated. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

52. As a direct and proximate result of the defendants' breaches of their fiduciary duties, defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business and good

will.

53. The Company has been directly and substantially injured by reason of the defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company, in an amount to be proven at trial.

## COUNT III

### Against All Defendants for Gross Mismanagement

54. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

55. By their actions alleged herein, the defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

56. As a direct and proximate result of the defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained and will continue to sustain significant damages in the millions of dollars.

57. As a result of the misconduct and breaches of duty alleged herein, the defendants are liable to the Company.

## COUNT IV

### Against Defendants for Waste of Corporate Assets

58. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

59. By engaging in the wrongdoing alleged herein, defendants wasted corporate assets by, among other things, improperly granting stock option grants, improperly manipulating stock options, failing to recover improperly secured profits, damaging the goodwill and reputation of the Company, and exposing the company to civil and criminal liability, for which they are liable.

60. As a direct and proximate result of defendants' wrongful conduct, the Company has suffered damages in an amount to be proven at trial.

## COUNT V

### Against The Management Defendants for
### Unjust Enrichment and Breach of the Duty of Loyalty

61. Plaintiff incorporates by reference all paragraphs above as if set forth herein.

62. As a result of the back-dating of the options granted to them, the Management Defendants have been and will continue to be unjustly enriched at the expense of and to the detriment of the Company.

63. Accordingly, this Court should order the Management Defendants to disgorge all profits, benefits and other compensation obtained by the Management Defendants, and each of them, from their wrongful conduct and fiduciary breaches described herein, and should order the options held by the Management Defendants, which have not yet been exercised, to be repriced at the market price of the Company's stock on the dates the Court finds that those options were actually, in fact, granted.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment as follows:

A. Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, gross mismanagement, waste of corporate assets and unjust enrichment;

B. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including declaring the improper compensation awards complained of herein to be null and void; and attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of the Company have an effective remedy;

C. Awarding to the Company restitution from the Management Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Management Defendants as a result of the conduct alleged herein;

D. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: June 2, 2006

Respectfully submitted,

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
FRANCIS A. BOTTINI, JR.
RACHELE R. RICKERT

*/s/ Betsy C. Manifold*
BETSY C. MANIFOLD

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

XILINX: 13379.CPT

16

I, L A Murphy, declare that I am a shareholder of Xilinx, Inc. common stock and have continuously so owned Xilinx, Inc. common stock since 2·28·00.

I have reviewed the foregoing Verified Derivative Action Complaint, and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

Signed and sworn to under the penalty of perjury:

Dated: May 25, 2006

L A Murphy

MAY.25.2006   5:06PM    H&R BLOCK FINANCIAL

NO.128   P.2

L. A. Murphy Acct 6094-6855
Xilinx Inc Purchases

| # Shares | Purchase Date | Price/ Share | Purchase Total |
|---|---|---|---|
| 400 | 3/01/01 | 85.00 | $ 34,110.00 |
| 2000 | 11/29/00 | 85.00 | 170,200.00 |
| 2000 | 8/28/00 | 89 7/16 | 178,877.75 |
| 1000 | 7/05/00 | 78 1/16 | 78,065.25 |
| 700 | 3/08/00 | 76 9/16 | 53,596.50 |
| 600 | 3/08/00 | 76 21/32 | 45,993.75 |
| 700 | 3/08/00 | 76 1/16 | 53,681.25 |
| 400 | 2/28/00 | 67 5/16 | 26,927.75 |
| 100 | 2/28/00 | 67 5/8 | 6,762.50 |
| 300 | 2/28/00 | 67 47/64 | 20,320.31 |



**H&R BLOCK**
financial advisors

## Account Holdings continued

| Equities owned | Symbol/Cusip Rating | Quantity | Estimated Market Price | Estimated Market Value | Purchase Value | Unrealized Gain/(Loss) | Estimated Annualized Income | Estimated Yield |
|---|---|---|---|---|---|---|---|---|
| XM SATELLITE RADIO HOLDINGS INC CLASS A | XMSR S&P = NR | 1,100 | 20.278 | $2,666.80 | | | | |
| XILINX INC | XLNX S&P = B | 8,280 | 27.67 | $229,864.00 | $1,659.75 | ($28,193.18) | 2,318.00 | 1.011% |
| **Total Equities** | | | | **$2,307,178.08** | | | | |

| Options | Symbol/Cusip Rating | Quantity | Estimated Market Price | Estimated Market Value | Purchase Value | Unrealized Gain/(Loss) | Estimated Annualized Income | Estimated Yield |
|---|---|---|---|---|---|---|---|---|
| CALL ALTERA CORP $22.50 EXP 09/16/06 | LTQIS | (27) | $1.15 | $(3,145.00) | $(2,050.16) | $(1,545.82) | | |
| CALL AMER EAGLE OUTFITTRS $30 EXP 05/20/06 | AQUEF | (10) | 2.9 | (2,900.00) | (2,050.16) | 846.82 | | |
| CALL APEX SILVER MINES $45 EXP 05/20/06 | SILEE | (30) | 0.4 | (1,200.00) | (2,950.15) | 1,780.16 | | |
| CALL ANALOG DEVICES INC $45 EXP 09/17/06 | ADIFI | (30) | 0.1 | (300.00) | (1,771.15) | 1,471.15 | | |
| CALL APPLE COMPUTER $70 EXP 05/20/06 | QAAEN | (30) | 2.8 | (8,200.00) | (4,884.04) | (315.82) | | |
| CALL BANK AMER CORP $47.50 EXP 09/16/06 | BACHW | (30) | 3.2 | (9,500.00) | (2,250.17) | (7,369.00) | | |
| CALL BOSTON SCIENTIFIC $23.50 EXP 05/20/06 | BSXEZ | (39) | 0.06 | (195.00) | (3,172.16) | 2,982.10 | | |
| CALL CHESAPEAKE ENERGY $35 EXP 06/20/06 | CHKEG | (30) | 0.2 | (590.00) | (1,280.20) | 580.20 | | |
| CALL CBS CORP CLASS B $25 EXP 06/16/06 | CBSIE | (23) | 1.6 | (4,840.00) | (2,750.12) | (860.88) | | |
| CALL CORNING INC $25 EXP 05/20/06 | GLWEE | (20) | 2.81 | (5,620.00) | (1,720.17) | (3,489.83) | | |
| CALL SIRIUS SATELLITE $5 EXP 06/17/06 | OXOFA | (30) | 0.15 | (1,250.00) | (1,320.20) | 80.20 | | |
| CALL CHARTER COMMNS INC $2.50 L7 EXP 01/20/07 | OIAJZ | (16) | 0.1 | (160.00) | (1,168.10) | 178.10 | | |